# Exhibit - 2

## Attach. A B C D E F

Exhib__ 2 - Refusal To Appoint A___ttorney

1. J.T.K. was recently able to aquire a limited amount of transcript and docket sheet information regarding Case # 8:99-cr-256 and a related Case # 8:99-cr-355 which was ultimately dismissed.

2. At the time of J.T.K.'s indictment, J.T.K. was $160,000.00 in personal debt without enough assets to even come close to payoff such debt, notwithstanding was without funds to aquire a defense attorney. Although J.T.K. was familiar with civil law to an extent working with corporation attornies; He knew nothing about criminal law. In fact, J.T.K. did not even know that he could appeal a magistrate's decision and believed a magistrate's word was final.

3. Within the docket sheets in Case # 8:99-cr-256 (Attachment A) and Case # 8:99-cr-256 (Attachment B), later dismissed, reveals the fact that Magistrate Judge McCown and Judge Larrara were fully aware that J.T.K. could not afford an attorney and both were aware that the court (both Judges), refused to appoint assistance of counsel as required by the U.S. Constitution. The Docket Sheet evidence is backed up by the Judges own words within the limited transcripts J.T.K. was provided with (Attach. C, D, E and F). Within the transcript evidence Attach. C, D, E and F, J.T.K. has provided/copied at least the first two pages and last page of each transcript referenced and at least one (1) page prior and one (1) page after each cite referenced within each transcript.

4. At the onset of the case JTK was advised by the Court that he did not qualify for a court appointed attorney. As JTK had no money and could not hire an attorney, JTK sent in his own Motions. (See See attach. A dck, 12, 16)  Then due to no court appointment of an attorney JTK was forced to file to appear Pro Se. (See attach. A dkt, 17). On August 19, 1999 trial Judge Richard A. Lazzara knowing JTK filed to appear Pro Se, refused to address the issue turning the decission over to Magistrate McCoun. (See attach. A dck, 19).

- 1 -

5.  The Court appointed JTK a criminal attorney however, the Court clearly appears to change it's mind well **after the fact** and projects it as a clerical error when in fact JTK believes it is **NO** clerical error. According to (See attach A dck. 30), the Court appointed JTK an attorney via voucher on August 30, 1999. Then the Court issues a new voucher modified almost two (2) months later on October 20, 1999. - Then states entered on August 31, 1999. (See attach. A dck. 31)

6.  JTK files Motion to witdraw as Pro Se, less than three (3) weeks after filing to appear Pro Se. However even though JTK had no attorney, he was still forced by the Court to proceed Pro Se, even though the Court had even refused to allow JTK to appear Pro Se on the same date, JTK filed to withdraw. (See attach. A dck's with no numbers between dck. 36 and dck. 37 on September 7, 1999). JTK was again forced to proceed Pro Se and the Court accepted JTK's Pro Se filings (See attach. A dck's 39, 41.)

7.  After JTK requested to withdraw as Pro Se, a Pro Bono **Corporate attorney** attached to a related dietary supplement company agreed to assist JTK only pretrial (would not participate during **any part** of the **trial phase** as he stated: "He was not qualified and refused to do so.") The corporate attorney was admitted by the Court on September 13, 1999 (Attach. A dck. 43). However, (See attasch A dck. 44) addresses a Pro Se motion by JTK pretaining to unsealing warrants which were not posted on the docket sheet at all.

8.  On October 12, 1999 (See attach. A dck. 66) JTK filed a Motion to travel to Reno, NV. to attempt to raise funds for a qualified criminal attorney. However was unsuccesful. Again, JTK attempts to sell stock to raise money for an attorney. Again unsuccessfully (See attach A dck. 68, 73, 76).

9.  With JTK's trial set for May, and JTK still not able to raise funds to hire a criminal attorney, JTK requests the Court to allow JTK

to be co-counsel with the corporate attorney who refuses to participate with any trial proceedings whatsoever. (February 24, 2000, (See attach. A dck.130) this again reflects that trial Judge Lazzara refused to address the issue of counsel and instructed Magistrate McCoun **dispose** of this Motion.

10. By April 09, 2000 both JTK and <u>Non-criminal</u> Corporate attorney Dunn learned that Magistrate Judge McCoun's orders could be appealed (See attach. A dck. 139). On April 16, 2000 Magistrate McCoun denies JTK to be co-counsel (See attach. A dck. 146) JTK appeals Magistrate McCoun's order denying JTK to appear as co-counsel. JTK knew that there would be no attorney at trial if JTK was refused as co-counsel, as did the trial judge (See attach. A dck. 150). On March 31, 2000, just a few weeks prior to trial and JTK with NO criminal attorney for trial - JTK was approved by the trial judge to appear as co-counsel, so JTK could represent himself at trial, which JTK did. Trial commences on May 02, 2000 (See attach A dck. 217). JTK participated in all trial proceedings Pro Se and the assisstance of counsel **did NOT participate at all**, as he refused to do so.

11. On May 17, 2000 just three (3) days prior to closing statement; with legal donations by the public, JTK hired a criminal attorney as he was unable to continue the trial himself, (See attach. A dck. 238).

12. JTK filed for court appointed counsel on July 10, 2000 (See attach. A dck. 271). Trial judge denies Motion for court appointed counsel (See attach A dck. 273). Motion for corporate attorney Dunn to withdraw as co-counsel and a renewed Motion for appointed counsel was filed (See attach. A dck 's. 275-276, on July 18, 2000). Order denying renewed Motion for assisstance of counsel and for attorney Dunn to withdraw (See attach. A dck. 278). JTK now has no experienced criminal attorney to appear for him knowledegable in guideline sentencing.

- 3 -

13.     The USA then files a notice of unavailabilty of counsel as per JTK then seals documents on August 17, 2000 and on August 23, 2000 from records (See attach. A dck's. 287 - 288)  Also (dck's. 289 - 290). JTK has always wondered what documents were ordered sealed by the court without the knowledge of the Defendant.

14.     JTK was able to convince a group of dietary supplement companies to band together and secure a criminal attorney for him to appear at his sentencing.  The attorney made an appearance at the last minute on September 22, 2000 (See attach. A dck. 335), almost 3 months after the trial was over.  As aforestated trial Judge Lazzara refused to appoint counsel for JTK.

15. JTK's trial ended on May 24, 2000 (Attach. A dck. 248) the Court had refused to appoint qualified criminal counsel from the onset - transcript (Attach. C p. 11) - Then appeared to appoint counsel (See attach. A dck. 30) The Court knew JTK was trying to raise money to hire an attorney (Exhibit S 68, 73, 76) - JTK files for court appointed attorney (Attach. A dck. 271). Court again refuses to appoint attorney (See attach. A dck. 273).

16.     At the same time that JTK's case # 8:99-cr-256 is ongoing JTK receives another charge in a subsequent case # 8:99-cr-355 (see attach B of Docket Sheet).  In this case the docket sheet is more precise and detailed.  The same Magistrate McCoun and Trial Judge Lazzara are the court officials.  Their actions in some instances severly <u>conflict</u> with their actions in case # 8:99-cr-256 as examples:

    A.     JTK requests a court appointed attorney pretrial in case # 8:99-cr-355 on July 11, 2000 (See attach. B dck. 74). Court refuses on July 11, 2000.  Corporate attorney Dunn requests JTK

- 4 -

remove him as counsel on July 18, 2000 (See attach. B dck. 75).

B.  A hearing was held by Judge Lazzara on August 10, 2000 (See attach. B dck. 84), regarding a motion by attorney Dunn to withdraw and a renewed motion for a court appointed attorney. Then the docket reveals the same hearing was now in front of Magistrate McCoun (See attach. B dck. 86). It appears again that Judge Lazzara wanted no part, on the record of making a decission on a court appointed attorney for JTK.

C.  On August 11, 2000 the court allows Dunn to withdraw and again refuses JTK's request for assistance of counsel in case # 8:99-cr-355 (See attach. B dck. 88). JTK again, was forced by the court to defend himself (See attach. B dcks. 90, 91, 92, 94, 95, 96, 98, 99, 105, 107, 108, 110, 112, 113) up until the case was dismissed on December 13, 2000.

D.  The significance here between the two cases is crystal clear as follows:

(1)  In both cases involving JTK both magistrate McCoun and Federal Judge Lazzara know JTK does not have the resources to hire a knowledgable criminal attorney and refuses continually to appoint one. The transcript record reflects **exactly that** in case # 8:99-cr-355, as a hearing was held and proof was presented to the court JTK was in fact $160,000 in personal debt with **NO assests**, well **after** the trial in case # 8:99-cr-256 was over in May of 2000.

(2)  In case # 8:99-cr-256 Judge Lazzara **refuses** to allow corporate attorney Dunn to withdraw on July 20, 2000. Yet three (3) weeks later the court in case # 8:99-cr-355 **allows** Dunn to withdraw on August 11, 2000 (Attach. A Dkt. 88 and again, JTK is forced to continue Pro Se as the court **refuses** to appoint an attorney on

- 5 -

August 11, 2000 (See attach. A Dkt. 88)

    (3)    JTK is forced by the court to proceed Pro Se from August 11, 2000 to December 13, 2000 in case # 8:99-cr-355. However, trial Judge Richard Lazzara offers JTK court appointed counsel in case #8:99-cr-256, on October 19, 2000. Approximately two (2) months prior to case # 8:99-cr-355 being dismissed which JTK was forced by the court to continue Pro. Se. (Exhibit 3, attach. A, p.221 L16-L19)

    C.    JTK just received approximately 300 more pages of various court transcripts from case # 8:99-cr-256. JTK has copied at least the first two (2) pages and last page of each transcript referenced and also at least one (1) page prior and one (1) page after each cite referenced within each transcript.

    18.    As the docket sheet reflects JTK was present in court without an attorney on many occasions, without being addmitted / accepted by the court (ref. attachment A and attachment B)

    19.    On August 25, 1995 in a lengthy hearing (transcript consisting of 89 pages) with both the government and JTK putting on witnesses JTK represented himself at the hearing, (ref. attach. C P.2 L.7). JTK represented himself, without counsel even though Magistrate McCoun had declined to admit / accept JTK to become Pro Se, pretrial, (ref. attachment A and attachment B)

- 6 -

20. Within this exhibit at #4, JTK references that the Court refused to to appoint counsel for his defence. However, the transcripts reveal much more than just that fact.

The transcript just arrived and is included herein (Attach. C P.11 L-2 - L-5.) Magistrate McCoun speaking to JTK was referring to when JTK was in court before him "<u>previously</u>" and states: "<u>my understanding when you left here, I had determined that it was inappropriate to provide you with appointed counsel.</u>" (Ref. attach. C P.11 L-2 - L-5).

21. JTK said within this exhibit that both judges in both cases knew JTK did NOT have the capital to hire qualified criminal attornies (ref. attach. A and B) This FACT is very evident from the very beginning as Magistrate McCoun was well informed (ref. attach. C P.11 L-20 - L-21), also (Attach. C P.23 L-14 - L-19), also (Attach. C P.24 L-15 - L-21). Even with the Court fully apprised JTK could NOT afford an attorney, the Court refused to appoint one (Attach. C P.25 L-21 - P.26 L-3). In fact the Court states: (Attach. C P.24 L-24 - L-25), ..."<u>At this point I'm NOT going to grant your Motion to proceed Pro Se.</u>" Yet Magistrate McCoun continues throughout that lengthy hearing with witnesses and subsequent Motions and hearings to allow JTK to represent himself. Even at the end of that hearing August 25, 1999 instead of appointing JTK an attorney, Magistrate McCoun requires JTK to hire one even though the Court has been fully apprised that JTK cannot afford one. In FACT Magistrate McCoun never at anytime even offered JTK an opportunity / hearing to prove he did not have the funds to hire a competent criminal attorney (ref. attach. C P.87 L-11 - L-13).

22. Prior to the September 9, 1999 hearing before Trial Judge Lazzara, JTK could only acquire a Pro Bono "reluctant" attorney that refused to represent JTK or participate in any proceedings at trial, as the attorney adamantly stated he was not qualified. It was quite evident by his answer to the Trial Judge Lazzara: "So Mr. Kimball has a lawyer now?" Answer, Mr. Dunn: "For the moment." (Ref. attach. D P.2 L-15 - L-17). By Judge Lazzara's comment: "So Mr. Kimball has a lawyer now?", (ref. attach. D p.2 L-15 - L-17), is a total admission by Judge Lazzara that he is familiar with the fact that JTK does not have an attorney and the fact that Court will NOT appoint an attorney. It is also fair to assume that by Trial Judge Lazzara being apprised of that fact - at such an early date (just after the initial hearing), that he was also fully aware that JTK cannot afford an attorney.

23. Trial Judge Lazzara admitts that he is aware that JTK was representing himself prior, (ref. attach. E P.6 L-11 - L-15). By Judge Lazzara's own admission, he knew that JTK was Pro Se without the authorization of the Court. In fact JTK with legal donations hired FDA knowledgeable attorney Nancy Johnson, for a one time appearance to argue FDA law before the Court. Attorney Johnson was hired to argue the fact of dismissal and legality of what JTK was doing, however trial Judge Lazzara refused to allow her to argue the legality of the chemical Selegiline. Or the fact of the legality of JTK's product. In fact Ms. Johnson attempted to bring up the fact of the law stating JTK could not, by law, be indicted without previous formal warning and that she had a witness present to prove such (ref. attach. E P. 18 L-20 - P. 19 L-13). However, Judge Lazzara cuts OFF Ms. Johnson's presentation and asks the governments prosecutor to "tell him", Judge Lazzara, what authority he has. (Ref.

- 8 -

attach. E P.19 L-13 - P.20 L-12). The trial Judge Lazzara is asking a <u>Bias Entity</u> to tell him his authority / jurisdiction. Judge Lazzara, if he did not know his jurisdiction he should have taken a break to find out. Not take the word of a bias prosecutor. (Ref. attach. E P.20 L-7 - L-12).

24. The transcripts just acquired indicated that in case # 8:99-cr-256 that as of April 13, 2010 JTK was not approved by the Court as Pro Se or Co-counsel by the Court, although the Court referenced JTK as Pro Se, (ref. attach. F P.4 L-12 - L-13).

25. The Sentencing Transcript clearly reveals that Magistrate Judge Thomas McCoun III and Judge Richard A. Lazzara from Tampa, Florida, were advised from the very start of the proceedings that JTK could not afford a competent Criminal Attorney, and knowing those facts, both refused to appoint an attorney even when requested to provide such. Then out of the blue, after the trial and sentencing was over; Judge Lazzara offers J.T.K. a Court Appoint Attorney, when he knew he should have done so, Pretrial. The two judges knew what they were doing was unconstitutional and that they had no authority/jurisdiction to do so, but did it anyway, usurping authority/jurisdiction.

T H E R E F O R E, both judges were without jurisdiction subject matter or otherwise to refuse J.T.K. Court Appointed Counsel violated due process of law and JTK's Constitutional rights. Therefore, the Trial Sentencing, and imprisonment is void (Ref. Memorandum of Law Exhibit 7).